FILED
2025 Jul-16  AM 10:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**LORI WHEELER,**
    Plaintiff,

**v.**

**ALABAMA COOPERATIVE
EXTENSION SYSTEM,**
    Defendant.

**Case No. 4:23-cv-1475-CLM**

## MEMORANDUM OPINION

Lori Wheeler sues Alabama Cooperative Extension System ("ACES") for three alleged Title VII violations: race discrimination, gender discrimination, and retaliation. (Doc. 1). ACES asks the court to grant it summary judgment on all counts. (Doc. 22). For the reasons explained below, the court **GRANTS** ACES's motion on all counts.

## BACKGROUND

ACES is the outreach organization for Auburn University and Alabama A&M's land-grant mission. ACES has offices in every Alabama county, and each office is lead by a County Extension Coordinator (CEC).

Wheeler (a white female) was the Dekalb County CEC from 2014 until she resigned in June 2023. In 2014, Wheeler hired Jessica Townsel as an administrative support assistance. As Townsel's direct supervisor, Wheeler was responsible for approving and overseeing Townsel's time. If Townsel inaccurately recorded her time, Wheeler could manually change Townsel's punch card. Central to this lawsuit is Wheeler's repeated alterations of Townsel's time cards.

**A. Edwards Reprimand**

Carol Edwards was an ACES HR officer who prepared ACE's bi-weekly payroll for non-exempt employees like Townsel. In January 2023, Edwards noticed Townsel's timecard had two out-punches: Townsel digitally clocked out at 4:04 PM, and Wheeler added a second, manual punch at 4:15 PM. Edwards reviewed Townsel's other timecards for the month and realized that Wheeler added a manual punch almost every other day. Edwards then sent Wheeler the following series of emails explaining that manually altering a subordinate's timecard is against company policy with few exceptions,

> **Jan. 31:** It is very rare that an actual punch should be removed . . . I see that you are manually entering the majority of punches. An admin should be punching the majority of their punches into [K]ronos and manual entry should be an exception. Is there anything going on in the office that we can help with?
>
> **Feb. 10:** Jessica should be clocking out and back in on her own for lunch to ensure we are tracking actual hours. Also, when you add those in you are not doing it correctly, causing you to delete her actual out punch which should NEVER be done. . . . Again, manual lunch entries should be the exception and not done every day.
>
> **March 27:** Please refrain from manually adding Jessica's lunch break time punches. Jessica should be clocking in and out as she does at the beginning of the day. It also shows her out punch is being manually added, this should be a punch made by Jessica. Please let me know if you have any questions.

Even after receiving Edwards' emails, Wheeler continued to change Townsel's time. Edwards met with Wheeler in person on April 20, 2023 to review the proper time keeping protocol.

### B. Mitchell Reprimand

Amelia Mitchell (a Black female) was ACE's Director of Field Operations and thus supervised Wheeler, a county CEC. When Mitchell learned of Wheeler's time-keeping indiscretions, she began impromptu visits to Wheeler's office. Mitchell visited Wheeler on February 15 and April 4, 2023 to find the office closed during working hours. On this second occasion, Mitchell waited for Wheeler to return (from a late lunch) to meet with her. During the meeting, Wheeler told Mitchell that she had filed an EEOC charge against ACES in 2019 for gender discrimination.

The next day, Edwards started auditing Townsel's time cards from earlier that year. She discovered that Wheeler continued to manually alter Townsel's time cards despite instructions to stop. Mitchell thus returned to visit Wheeler a third time on April 25 and again explained proper timekeeping procedures.

### C. Wheeler's complaints

Three days later (April 28), Wheeler called Auburn's Employee Relations Manager Sonya Dixon to complain that Mitchell was badgering her. Wheeler also wrote a grievance statement. The call and statement were not relayed to Mitchell, Edwards, or other decision makers.

On May 15, Mitchell scheduled a May 17 meeting with Wheeler. Later that day (May 15), Wheeler emailed multiple people, including Mitchell and Edwards, to complain that she had been "harass[ed]" and "questioned" about the timekeeping issue.

### D. Resignation / Termination

On May 17, 2023, Mitchell, along with an HR and Employee Relations representative, met with Wheeler in her office. At the end of the meeting, ACES placed Wheeler administrative leave because of her time-

keeping issues and gave Wheeler one week (until May 24) to provide more information about the time keeping issues. She did. (Doc. 21-14, p.3).

On May 30, 2023, Mitchell mailed Wheeler a letter that said Wheeler would be terminated effective June 3, 2023. (Doc. 21-1, p. 122). The letter cited Wheeler's "inability to effectively serve in the role of [CEC]" and her "actions and decisions regarding maintaining accurate payroll records and making adjustments to the time card of [Townsel]," as the reasons for termination. (Doc. 23, p. 13). Wheeler received the letter on June 1 and promptly emailed Mitchell and others a resignation letter that was immediately effective. On June 2, Mitchell accepted Wheeler's resignation.[1]

### E. Lawsuit

Wheeler now sues ACES for race and gender discrimination as well as retaliation under Title VII. Wheeler alleges that ACES never told her to stop entering manual punches and failed to properly train her on the time keeping policies. Wheeler also highlights two other white employees that Mitchell terminated, one of whom filed a grievance against Mitchell citing race as a reason for adversarial treatment. ACES asks the court to grant summary judgment in its favor on all counts.

### STANDARD

Summary judgement is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[1] The court assumes without deciding that a reasonable juror could find that Mitchell's May 30 letter constitutes an adverse employment action despite Wheeler resigning before the termination letter became effective on June 3.

# DISCUSSION

After reviewing the evidence in the light most favorable to Wheeler, the court **GRANTS** summary judgment for ACES on all three counts.

## <u>Count 1</u>: Race Discrimination, Title VII

Wheeler first claims that ACES violated Title VII by firing her because of her race. Before the court addresses the merits, it must address the proper standard.

A. *Proper Standard*: ACE briefs this issue in part by using the *McDonnell Douglas* burden-shifting framework. But the Eleventh Circuit has signaled a departure from *McDonnell Douglas* toward a more basic, Rule 56-based inquiry: Has the Plaintiff submitted enough evidence to allow a reasonable juror to find that the Defendant employer acted against Plaintiff because of her race? *See Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310 (11th Cir. 2023) ("The legal standard—and the question for the court at summary judgment—is only whether the evidence permits a reasonable factfinder to find that the employer retaliated against the employee"); *Tynes v. Fla. Dep't of Juv. Justice*, 88 F. 4th 939, 946-47 (11th Cir. Dec. 12, 2023) ("This rearticulation of the summary judgment standard arose in large part because of widespread misunderstandings about the limits of *McDonnell Douglas*—the same misunderstandings that persist today. A 'convincing mosaic' of circumstantial evidence is simply enough evidence for a reasonable factfinder to infer intentional discrimination in an employment action—the ultimate inquiry in a discrimination lawsuit."). In a recent Title VII case, Justice Thomas likewise criticized *McDonnell Douglas's* use in judging Rule 56 motions and said that "litigants and lower courts are free to proceed without the *McDonnell Douglas* framework." *Ames v. Ohio Dep't of Youth Servs.*, 145 S. Ct. 1540, 1555 (2025).

This court will follow the Circuit and Justice Thomas's lead by judging ACES' motion only under Rule 56.

B. *ACE's Evidence of Non-Discrimination*: Rule 56(a) starts with the moving party's burden. Title VII prohibits ACES from terminating Wheeler "because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). ACES says that race played no part in its decision to fire Wilbanks; ACES says that it decided to fire Wheeler because of her improper keeping of Townsend's time. As detailed in the Background section, ACES presents testimony and documents that support this nondiscriminatory reason, including Wheeler's May 30th termination letter that spells out this reasoning:

I have carefully considered all of the information available, including your personal comments during the meeting on May 17, your written responses, and determined that it is in the best interest of Auburn University and ACES that your employment be terminated. Ongoing concerns regarding your management of the county office show your inability to effectively serve in the role of County Extension Coordinator. Your actions and decisions regarding maintaining accurate payroll records and making adjustments to the timecard of Ms. Jessica Townsel constitutes a Group I offense under Auburn University Employee Conduct and Job Rules. As a result of the Group I offense, you will not be eligible to be rehired at Auburn University.

(Doc. 21-1, p. 122). This is enough evidence to support a finding that ACES decided to fire Wheeler because of her non-compliance with ACE's job requirements—*i.e.*, a reason that does not violate Title VII. ACES is therefore entitled to summary judgment unless Wheeler offers evidence that supports race as a but-for factor in ACES' decision, thus creating a genuine issue of material fact. *See* Fed. R. Civ. P. 56(a); 56(c).

C. *Wheeler's Evidence of Discrimination*: To defeat ACE's motion, Rule 56(c) requires Wheeler to provide evidence (not just speculation) that would allow a reasonable juror to find that ACE fired Wheeler "because of [her] race," 42 U.S.C. § 2000e-2(a)(1), not because of her non-compliance with ACE's rules. Wheeler argues this in her brief in opposition:

> Ms. Wheeler was subjected to multiple visits by Ms. Mitchell from February to May 2023, during which she faced redundant and repeated questioning about Ms. Townsel's timecard. (Doc. 21-1 at 88:13-90:5). Ms. Wheeler described these interrogations as akin to being in a "police investigation," with the same questions asked repeatedly,

> leading her to believe the treatment was harassing and discriminary. *Id*. She pointed out that she and Ms. Mitchell were of opposite races, and two other Caucasian CECs had been terminated by Ms. Mitchell. (Doc. 21-1 at 95:12-97:9). Additionally, Ms. Wheeler was aware of a Caucasian male CEC in Cherokee County, Danny Miller, who had filed a grievance against Ms. Mitchell and believed that his race played a factor in his treatment. *Id*. Based on these experiences, Ms. Wheeler perceived the repeated interrogations and adverse actions against her as racially motivated.

(Doc. 25, p. 36). In short, Wheeler offers three facts to create a genuine issue of material fact:

- Wheeler was white, while Mitchell was Black;
- Mitchell had fired two other white CECs; and,
- Another white CEC believe Mitchell mistreated him because of race.

That Mitchell is Black, without more, is not evidence that Mitchell would discriminate against Wheeler because she is white. And Wheeler admitted that she did not know the details of two firings and one discipline incident she mentioned; she only knew the races. At her deposition, Wheeler testified that these other white employees could have been disciplined for nondiscriminatory reasons; she simply didn't know (Doc. 21-1, pp. 25-27). Wheeler admitted that the one person she talked to (Danny Mitchell) did not say his treatment was because of race, "[i]t was just an implication." (*Id.*, p. 27). That's why, as Wheeler puts it in her brief, she "***perceived*** the repeated interrogations and adverse actions against her [were] racially motivated." (Doc. 25, p. 36) (emphasis added).

Perception is not evidence, and "an inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982) (quotation omitted).

And "[s]peculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (emphasis in original) (quotation omitted).

Because Wheeler has no evidence that race played a role in ACE's decision, only her own perception of what happened, she fails her Rule 56(c) burden to present enough evidence to create a genuine issue of material fact about why ACE decided to fire her. Because there is no genuine issue of material fact, the court must **GRANT** ACE's motion for judgment on Count I. *See* Fed. R. Civ. P. 56(e).

**<u>Count 2</u>: Gender discrimination, Title VII**

Wheeler next alleges that ACES decided to fire her because she is female. As explained in the court's discussion of Count I, ACES says that it decided to fire Wheeler because of her improper keeping of Townsend's time, not because of her gender. Because ACES presents evidence that supports this nondiscriminatory reason, ACES is entitled to summary judgment on Count II unless Wheeler offers evidence that supports gender as a but-for factor in ACES' decision, thus creating a genuine issue of material fact. *See* Fed. R. Civ. P. 56(a); 56(c).

Wheeler argues this in her brief in opposition:

> Ms. Wheeler believed she was subjected to gender discrimination due to her position as a female CEC in a male-dominated agricultural field. (Doc. 21-1 at 102:8-23). She testified that her lack of an agricultural background, combined with her gender, placed her at the disadvantage in DeKalb County, the largest agricultural county in the state. *Id.* Ms. Wheeler believed that ACES preferred a male in her position and felt that efforts were being made to remove her in favor of a male candidate with an agricultural background. *Id.* at 103:1-4. She also noted the underrepresentation of women in her district, stating that at

> meetings she often found herself in a male-dominated environment, further reinforcing her belief that she was being targeted because of her gender. *Id.* at 107:3-21. In addition to the discriminatory treatment, Ms. Wheeler encountered obstacles when attempting to file a grievance. She recounted when she was denied the opportunity to file a grievance by Sonja Dixon, which she believed was in violation of her federal right as a woman over forty. *Id.* at 135:19-32. Ms. Wheeler's inability to formally address her concerns, coupled with ongoing harassment and unequal treatment, supports her claim that she was discriminated against because of her race and gender.

(Doc. 25, p. 34–35).

As you can see, Wheeler again leans on her "belief," not evidence, using the word three times in her short response. Mere speculation "that ACES preferred a male in her position" and that ACES wanted to replace her with "a male candidate with an agricultural background" is not enough to create a genuine dispute of fact. *Cordoba* 419 F.3d at 1181 ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment."). Nor do the facts support Wheeler's personal belief, as Wheeler testified that ACES temporarily replaced her with a female, then permanently with a female. *See* (doc. 21-1, p. 31).

Because Wheeler has no evidence that gender played a role in ACE's decision, only her own perception of what happened, she fails her Rule 56(c) burden to present enough evidence to create a genuine issue of material fact about why ACE decided to fire her. Because there is no genuine issue of material fact, the court must **GRANT** ACE's motion for judgment on Count II. *See* Fed. R. Civ. P. 56(e).

**Count 3**: **Retaliation**

In her last count, Wheeler alleges that ACES retaliated against her for engaging in protected activity. (Doc. 9, ¶ 46-48). To prove this claim, Wheeler must show that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) that there is some causal relationship between the two events. *See Meeks v. Comput. Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994). Before the court can analyze these elements, the court must first decide what protected activity is at issue because Wheeler did not identify the protected activity that led to her constructive discharge when she pleaded Count III. (Doc. 9, ¶¶46-48).

1. *The protected activity at issue*: Again, Wheeler did not identify the protected activity when pleading her retaliation claim. (Doc. 9, ¶¶46-48). Looking back to the operative complaint's statement of facts (*Id.*, ¶¶ 1-39), the only activity Wheeler mentions is her unsuccessful attempt to file an internal grievance with ACES' HR on April 28, 2025 "regarding Ms. Mitchell's ongoing interrogation, harassment, and discrimination." (*Id.*, ¶ 26). This act—*i.e.*, the attempted filing of a grievance on April 28, 2023— is also the only protected activity that Wheeler presented to the EEOC in her June 2023 agency complaint. *See* (doc. 21-1, pp. 125-26).

Yet, in her brief in opposition, Wheeler claims that she engaged in two distinct sets of protected activity that led to ACES' decision to fire her: (1) Wheeler filed an EEOC complaint about gender pay discrepancies in 2019, and (2) Wheeler made three internal complaints about Mitchell's investigation into Wheeler's timekeeping, starting with the April 28th grievance—*i.e.*, the protected activity Wheeler pleaded in her complaint and to the EEOC. (Doc. 25, pp. 20-22).

While it seems clear that Wheeler failed to allow the EEOC to investigate whether her filing of an EEOC complaint about pay discrepancies in 2019 led to her constructive discharge in 2023, in its answer, ACES admitted Wheeler's fact pleading that she had "pursued and exhausted her administrative remedies" (doc. 12, p. 16), and ACES does not mention Wheeler's failure to exhaust in its reply brief. (Doc. 26).

So the court finds that ACES has waived a failure to exhaust argument for the 2019 EEOC complaint. But ACES did argue in its opening brief and its reply brief that Wheeler did not plead any facts about the 2019 EEOC complaint in her amended complaint. (Doc. 23, p. 37, n.6; doc. 26, p. 14 n. 9). And Eleventh Circuit precedent provides that unpleaded claims cannot be raised for the first time during summary judgment briefing. *See White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1200 (11th Cir. 2015) ("Despite the liberal pleading standard for civil complaints, plaintiffs may not raise new claims at the summary judgment stage."). The court thus finds that Wheeler failed to properly place before the court a claim that ACES decided to fire Wheeler in 2023 because Wheeler filed an EEOC complaint in 2019. *Id.*

That leaves the retaliation claim that Wheeler presented to the EEOC and pleaded in her operative complaint: ACES decided to terminate Wheeler because she tried to file an internal grievance about Mitchell's timekeeping investigation on April 28, 2023.

2. *No protected activity*: ACES argues that there is no genuine dispute that Wheeler's April 28th internal grievance did *not* "oppose[] any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3. Rather, Wheeler complained that her timekeeping troubles stemmed from ACES' failure to adequately train her. Wheeler's April 28th grievance statement supports ACES' contention:



Step 1: Statement of Grievance *(attach any supporting documents as deemed necessary)*

**Identify the policy that is being grieved**
8.4.3 Disciplinary action should be corrective rather than punitive. A series of disciplinary actions may result in dismissal, unless dismissal is the result of a major act of misconduct. The kind of corrective action initiated by the supervisor depends upon the severity of the situation. Wherever possible, counseling should be used before formal corrective action is taken.

**Statement of Grievance**
I have documented my admin.'s deficiency with clocking in/out on kronos since 2019 on her performance reviews. No one from Ext. Mgt./HR has raised an issue with me concerning this until 2/2023.Since then,I have had 4 "accusatory" visits with my supervisor and 1 from Ext. HR. w/i a 2 mo.pd. On 4/25 i was finally offered a resource guide.I've been punitively scolded,not correctively assisted. I've been repeatedly interrogated when I didn't know what I was doing was wrong or why.

**Remedy Requested**
Time to implemement guide/booklet suggestions.Time to work with my admin.on these policies & show improvement. I've been berated over policies I didn't know. I'm anxious now as I've been reprimanded multiple times in a short pd. & I feel like its going to lead to disciplinary action.

(Doc. 24-6, p. 2). In it, Wheeler says that her grievance is that Mitchell "punitively scolded" her about timekeeping "after four accusatory visits," instead of "correctively assist[ing]" Wheeler with her timekeeping responsibilities. *Id.* Wheeler did not allege that Mitchell was investigating or scolding her because of any protected characteristic like race or gender.

Wheeler's subsequent complaints about Mitchell's investigation likewise focus on ACES' lack of training and corrective assistance—not Wheeler's race or gender. On May 15, 2023, Wheeler emailed a group of ACES and Auburn officials her complaint that Mitchell "harass[ed]" her and "raked [her] over the coals" on the timekeeping issue rather than help her learn how to record time in compliance with the rules. (Doc. 24-7, p. 2). Wheeler said she felt like a "scapegoat" for "HR/AU Extension's lack of training or followup on this topic[.]" (*Id.*). Again, Wheeler did not allege that Mitchell or anyone else at ACES or Auburn were acting against her because of her race, gender, or any other characteristic or activity protected by Title VII. (*Id.*).

After ACES put Wheeler on administrative leave, Wheeler wrote a "letter of rebuttal" and emailed it to Chris McClendon, Auburn's Employee Relations Manager. *See* (doc. 24-8). Again Wheeler pointed to ACE's failure to train her how to keep proper time cards—not Wheeler's race or gender—as the reason for Mitchell's treatment:

> Letter of Rebuttal
>
> I am writing this letter of rebuttal to state that I in no way did anything purposely illegal or anything that could be perceived as illegal when certifying Jessica Townsel's time. Any mistakes that I may have unknowingly made were due to a lack of training by ACES and accessibility to online resources to refer to. As I stated in my meeting with Human Resources on May 17, 2023, I do not recall being formally trained on ACES policies regarding timecards. Moreover, ACES' Policy Manual contains no guidance regarding this issue.

(*Id.*, p. 1). Later in the letter, Wheeler reiterated that she was being reprimanded "because of this [timekeeping] issue," and Wheeler apologized that "my purported actions have caused this process":

> have been a valuable employee for ACES. I am also committed to their goals and mission. However, in the last few months, since January 2023, I feel like I have been singled out, harassed, treated as less than an employee, and subjected to an ongoing interrogation by ACES because of this issue. The thought of losing my employment and career has given me extreme anxiety and forced me to seek medical attention. I'm sorry that my purported actions have caused this process, but I want to reiterate that I in no way did anything purposely illegal or that could be perceived as illegal when certifying Jessica Townsel's time. In fact, all these accusations come with virtually no investigation into physical facts that would prove I'm/we're telling the truth such as our building surveillance camera and the fact I/we are constantly logging into our computers onsite with our password protection/security measures that could be pulled and documented in our favor.

(*Id.*). Again, Wheeler failed to mention race, gender, or any other characteristic or activity protected by Title VII.

Based on this evidence, the court finds that ACES has adequately demonstrated that Wheeler opposed Mitchell's investigation and the resulting discipline because Wheeler believed ACES inadequately trained her—not because Wheeler believed that Mitchell or any other ACES agent was violating a right protected by Title VII. *See* Fed. R. Civ. P. 56(a); 56(c). As a result, to avoid summary judgment on Count III, Wheeler must present some evidence that she opposed "any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3.

Wheeler cannot. Rather than point to evidence that Wheeler complained that Mitchell was acting because of Wheeler's race or gender, in her brief in opposition, Wheeler pointed to the same writings the court quoted above to rotely argue that "she felt she was being subjected to harassment." (Doc. 25, p. 23-24). Wheeler did not try to tie the perceived "harassment" to a practice made unlawful by Title VII. And that's what matters: Even if Mitchell's investigation was aggressive and unfair, and even if ACES should have given Wheeler more training rather than a pink slip, if Wheeler never complained that the investigation into her timekeeping was based on a protected characteristic like race or gender, then Wheeler did not engage in a protected activity under § 2000e-3.

In short, Wheeler presents no evidence that would allow a reasonable juror to find that she engaged in a protected activity, so there is no genuine issue of material fact on the first element of Wheeler's retaliation claim. The court must therefore **GRANT** summary judgment on Count III.

## CONCLUSION

For these reasons, the court **GRANTS** summary judgment for ACES on all counts. The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** on July 16, 2025.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE